# EXHIBIT 2

# EXHIBIT 2

CODE: 3370

**FILED**
Electronically
05-18-2010:01:32:35 PM
Howard W. Conyers
Clerk of the Court
Transaction # 1495407

IN THE FAMILY DIVISION

OF THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF WASHOE

JOEL BIGGS,

    Plaintiff,

vs

SHEELAGH DAWN BIGGS,

    Defendant.
_____/

CASE NO. DV05-02431

DEPT. NO. 13

### ORDER TO ENFORCE AGREEMENT OF THE PARTIES AND ORDER OF CONTEMPT

    This matter came on for an evidentiary hearing on April 14, 2010. Plaintiff, Joel Biggs was present and represented by Erin L. Albright, Esq. of Fahrendorf, Viloria, Oliphant & Oster LLP. Defendant, Sheelagh Dawn Biggs, was present and represented by Jaymie Mitchell, Esq.

    This matter was based upon Defendant's Motion to Compel Plaintiff to Place Marital Residence on the Market; Motion for Order to Show Cause re: Contempt filed August 25, 2009; Plaintiff's Opposition filed September 25, 2009 and Defendant's Reply filed on October 21, 2009.

    Based upon these papers; the Property Settlement Agreement approved by the Court on November 15, 2006; the evidence introduced at trial; the testimony of

-1-

the witnesses; the argument of counsel; and all of the papers, pleadings and orders on file herein, and for good cause shown, the Court finds and concludes as follows.

## A. BACKGROUND FACTS

The Parties were divorced in Nowra Court in Australia on October 9, 2005. Incident to that divorce action was the present case which was commenced in Nevada due to the location of real property assets here. On June 9, 2006, the Parties entered into a Property Settlement Agreement ("PSA") which was then adopted by the Court as its Order. See Stipulation and Order for Final Property Division entered on November 15, 2006.

The PSA provides that the real property located at 625 Wedge Lane, Fernley, Nevada (the "Marital Residence") shall be "immediately listed for sale." See PSA, p.3, ¶ D. The PSA then details various debts to be paid from the proceeds of sale. See id.

Due to the strong real estate market which existed when the PSA was executed, it appears that neither Party contemplated the consequences of the Marital Residence failing to sell.

The Marital Residence was listed for sale with an agent.[1]

The Marital Residence continued to be listed until on or about October 29, 2007. See Defendant's Trial Exhibit 15.

Plaintiff claims that Defendant caused the Parties' realtor to abandon the listing by being difficult to deal with.

Defendant alleges that the Marital Residence was taken off the market shortly after Plaintiff filed a Motion regarding undisclosed property.

The timeline of events is telling on this issue.

1.    On September 21, 2007, Plaintiff filed his Motion to Divide Undisclosed Property.

---

[1] There is some conflict in the testimony regarding how the agent was selected, however, it is undisputed that the Marital Residence was listed for sale on or about June 28, 2006. See Defendant's Trial Exhibit 15.

1         2.      On October 29, 2007, the Marital Residence was withdrawn from MLS. See Defendant's Trial Exhibit "15".

        3.      On November 2, 2007, Defendant contacted the realtor seeking information about the listing price for the Marital Residence. See Plaintiff's Trial Exhibit "A", p.1.[2]

        4.      On November 3, 2008, the Court's order Re: Liquidated Damages Clause was entered. This Order involved Plaintiff's Motion to Divide Undisclosed Property.

        5.      On November 21, 2008, the Marital Residence was relisted with the same realtor, Jennifer Capurro, and placed back on the market. See Defendant's Trial Exhibit "15".

        This timeline clearly shows that the Marital Residence was taken off the market prior to any disagreement between Defendant and Ms. Capurro, but after Plaintiff's Motion to Divide Undisclosed Property. This also shows the Property was not placed back on the market until Plaintiff's Motion to Divide was decided by the Court.

        Although Plaintiff testified that he could not control the listing or sale of the Marital Residence, and therefore could not have taken the residence off the market, his testimony is not credible as it is contradicted by his own actions. The June 28, 2006 listing documents were signed or initialed by only Plaintiff. See Defendant's Trial Exhibit "9". The listing was then extended or renewed seven additional times. See Defendant's Trial Exhibit "15"; Plaintiff's Trial Exhibit "B". At least three of these extensions or renewals were accomplished completely without Defendant's knowledge, as she was not aware the Marital Residence had been relisted until after she filed her present Motion. In addition, there were two reductions in the listing price during this same time period. These reductions were made without Defendant's knowledge, and therefore must have been done with Plaintiff's agreement.

---

[2] Plaintiff places great stock in a letter from Ms. Capurro taking the home off the market and returning the keys to Plaintiff. See Plaintiff's Trial Exhibit "C". However this letter is undated and Plaintiff did not supply a date for when he allegedly received this note.

The history of the listing of the Marital Residence demonstrates that Plaintiff acted unilaterally and without consulting Defendant when dealing with Ms. Capurro. Moreover, Ms. Capurro required a subpoena for Defendant to review the listing file and then declined to appear at hearing when she was under a subpoena to do so. These are not the actions of a person who believes she is employed by both parties. Finally, Plaintiff utterly refused to permit another realtor to list the Marital Residence.

Once the Marital Residence was returned to the market, the evidence shows that Plaintiff did nothing to sell the property. The "For Sale" sign is almost entirely hidden by foliage in the front yard. See Defendant's Trial Exhibit "14". The landscaping in the front yard has been permitted to become overgrown and unkempt. See id. In addition, the photos of the interior of the home which are available on-line present the home as messy, and do nothing to make the home attractive to prospective buyers. See Defendant's Trial Exhibit "13". Simply put, the Court believes that while Plaintiff may have complied with the letter of the Court's Order after November 21, 2008, he sought to thwart its intent.

## B. SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 1. Contempt of Court

This Court is invested with the authority to enforce its Orders. A Court has the power to compel obedience to its lawful judgments, orders and process, in an action or proceeding pending before it. See NRS 1.210(3).

Contempt is defined as "[D]isobedience or resistance to any lawful writ, order, rule or process issued by the court or judge at chambers." NRS 22.010(3).

In order for contempt to lie, the order at issue must be clear and unambiguous; must have been served on the party to be bound; and must spell out the details of compliance in clear, specific and unambiguous terms so that the party to be bound knows exactly what duties or obligations are imposed on him. See Cunningham

-4-

v. Eighth Judicial District Court of State of Nevada, 102 Nev. 551, 729 P.2d 1328 (1986).

Pursuant to the Court's November 15, 2006 Order approving, ratifying and incorporating the Parties' June 9, 2006 PSA, Plaintiff knew the home was to be listed for sale immediately and was to remain listed until sold. This Order is clear and unambiguous. The PSA was signed by Plaintiff and the November 15, 2006 Order was served on his counsel. Despite the clear terms of the Order, Plaintiff caused the Marital Residence to be removed from the market from October 29, 2007 through November 21, 2008 - a period of more than a year during which the real estate market in Northern Nevada dropped significantly and Fernley experienced a devastating flood. After his Motion to Divide Undisclosed Property failed, Plaintiff caused the Marital Residence to be placed back on the market, thereby demonstrating that he had the ability to comply with this Court's Order and that his violation was willful. See, e.g., Rodriguez v. Eighth Judicial District Court ex rel. County of Clark, 120 Nev. 798, 102 P.3d 41 (2004). Plaintiff provided no credible explanation for his conduct. Even after the Marital Residence was re-listed for sale, Plaintiff has done nothing to assist with any sale.

Accordingly, this Court finds Plaintiff to be in contempt of court. As punishment for a contempt, a court can levy a fine and can order the offending party to pay the reasonable expenses, including attorney's fees and costs of travel incurred by the party who has been forced to bring the motion regarding contempt. The Court believes this sanction to be appropriate. Accordingly, Defendant's counsel shall have ten days from the date of this Order to file an Affidavit detailing the fees and costs expended by Defendant in bringing the present Motion. The Affidavit shall include Defendant's costs of travel.[3]

---

[3] Defendant requested that she be permitted to appear telephonically but Plaintiff refused to permit this. Plaintiff must bear the consequence of his actions.

### 2. Motion to Put Marital Residence Back on Market

The equitable remedy which Defendant seeks appears to be in the nature of a request to reform or rescind the Parties' PSA. Defendant admitted that this was not a perfect solution and also requested, at hearing, that she be compensated for the loss in value the property has suffered during the time of Plaintiff's contempt. This theory was tried by Defendant without objection by Plaintiff.

The trial court has discretion to fashion equitable remedies that are complete and fair to all parties involved. See Bedore v. Familian, 122 Nev. 5, 11-12 n. 21, 125 P.3d 1168, 1172 n. 21 (2006). The question is not whether the Court has the power to fashion a remedy, but whether based on the parties' misconduct, such power was appropriately exercised in a particular case. See id.

As set forth at length above, Plaintiff has treated the Marital Residence as his own without any regard to the obligation to sell and to Defendant's significant disadvantage. Simply continuing to require the Marital Residence to remain on the market is an inadequate remedy. This merely preserves the status quo at Defendant's expense.

Plaintiff has indicated by word and deed that he wants to retain the Marital Residence. He will be permitted to do so. However, Plaintiff shall also be required to pay the debts this result requires. First, the child support arrearages claim shall remain a lien on the Marital Residence. However, Plaintiff shall now be required to pay these arrears in an amount and within the time frame set by the Third Judicial District Court pursuant to its on-going enforcement action, (Case No. CI-1723, Dept. No. III) in conjunction with the Nowra Court in Australia.[4]

Secondly, Defendant shall receive a judgment in an amount equal to the equity to which she would have been entitled in 2007 had the Marital Residence remained on the market. The Court notes that Defendant has requested that she

---

[4] As this Court has jurisdiction only over the arrears as they impact the Marital Residence, this Court declines to set a payment schedule for these arrears.

-6-

receive her share of equity based on the offer on the Marital Residence which Plaintiff refused. This offer was "non-standard" in that the sellers would have been required to carry Sixty Thousand Dollars ($60,000.00) back secured by a second deed of trust on the property. While the Court found Plaintiff's testimony regarding his reasons for refusing the offer to be lacking credibility, or at least lacking an understanding of the structure of the proposed transaction, Defendant had remedies at the time she could have employed and she did not use them.

The Court finds that the listing price of Two Hundred Seventy Seven Thousand Nine Hundred Dollars ($277,900.00) – the price on October 29, 2007 when the Marital Residence was taken off the market – to be the appropriate value. Plaintiff testified that the current mortgage amount encumbering the property is One Hundred Twenty One Thousand Dollars ($121,000.00).[5] He also testified that he had paid the outstanding credit cards in his name, but that he had not paid the credit card held in Defendant's name.

The total equity in the Marital Residence as of October 29, 2007 is deemed to be One Hundred Fifty Six Thousand, Nine Hundred Dollars ($156,900.00). Defendant's portion of this equity is Seventy Eight Thousand, Four Hundred Fifty Dollars ($78,450.00)

Defendant shall be entitled to a judgment in the amount of Seventy Eight Thousand, Four Hundred Fifty Dollars ($78,450.00) bearing interest at Nevada's legal rate from August 25, 2009 (the date the Motion to Compel was filed) until paid in full ("Judgment"). Defendant shall execute a quit claim deed to the Marital Residence which shall be placed in trust with her counsel. When the Judgment has been paid in full, Defendant's counsel may release the quit claim deed to Plaintiff.

It is this Court's intent, to the greatest extent possible, that the Judgment be treated as a domestic support obligation as that term is defined at 11 U.S.C. § 101

---

[5] Plaintiff argued that he should receive credit for servicing the mortgage debt and other debts against the real property. Plaintiff neglects to factor in the benefit to him of the rental value of living in the Marital Residence. These amounts cancel each other out and Plaintiff shall receive no credit.

1  (14A), as the Judgment represents a debt arising out of a property settlement
2  agreement.
3        Defendant shall remain responsible for the credit card in her name.
4  Plaintiff shall receive no off-set for the credit cards he paid as he did this for his own
5  benefit rather than to comply with the PSA.
6        IT IS SO ORDERED.
7        DATED this __18__ day of May, 2010.

*/s/ Bridget Robb Peck*
BRIDGET ROBB PECK
District Judge

-8-

## CERTIFICATE OF SERVICE

I hereby certify that on __18__ of May, 2010, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which will send a notice of electronic filing to the following:

RAYMOND OSTER, ESQ.
ERIN ALBRIGHT, ESQ.
JAYMIE MITCHELL, ESQ.

_____
Judicial Assistant

-9-