LOUIS M. BUBALA III, ESQ.
Nevada State Bar #8974
ARMSTRONG TEASDALE LLP
50 West Liberty, Suite 950
Reno, NV 89501
Telephone:  775.322.7400
Facsimile:  775.322.9049
Email:  lbubala@armstrongteasdale.com

Counsel for Sheelagh Dawn Biggs

ELECTRONICALLY FILED ON
September 7, 2011

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>    JOEL P. BIGGS,<br><br>Debtor. | Case No.: BK-N-10-54412-BTB<br><br>Chapter:  13 |
| SHEELAGH DAWN BIGGS,<br><br>    Plaintiff,<br><br>v.<br><br>JOEL P. BIGGS,<br><br>    Defendant. | Adv. Proc. No.:  11-05012-BTB<br><br>**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff/Creditor Sheelagh Biggs files this statement of undisputed facts in support of her motion for summary judgment on Count II of her complaint, seeking to declare Defendant/Debtor Joel P. Biggs' debt owed to be nondischargeable as arising from willful and malicious injury by the debtor to her or her property under 11 U.S.C. § 523(a)(6).  L.R. 7056(a).

The following facts are drawn from the record in the parties' state court proceedings, *Biggs v. Biggs*, Case No. DV05-02431, Dept. 13 (Second Jud. Dist. Ct., Washoe County, Nev.), and the record in the main case, *In re Biggs*, Case No. BK-N-54412-BTB (Bankr. D. Nev.).  Plaintiff believes that the documents speak for themselves, but provides a concise statement of the facts as required under Federal Rule of Civil Procedure 56 and Local Rule 7056(a).

///

///

1

In the state court proceedings, the parties were reverse of their arrangement here: Mr. Biggs was the plaintiff, and Ms. Biggs was the defendant. For ease of reference, the summary has been modified with parentheticals to identify the parties in their current situation, with Ms. Biggs as plaintiff and Mr. Biggs as defendant.

1. Plaintiff and Defendant divorced in 2005 (Ct. Dkt. #24, Decl. of J. Biggs, ¶¶2-3).

2. In 2006, the Second Judicial District Court of Nevada approved a stipulation containing the terms of a property settlement agreement (*Id.* at Ex. 2, PDF Pages 20-41).

3. The settlement agreement addressed their "community property real property located at 625 Wedge Lane, Fernley, Nevada ('Marital Residence')" (*Id.* at PDF Page 29, ¶D).

4. The settlement agreement also stated "that the Marital Residence shall be immediately listed for sale" (*Id.*).

5. In 2009, Plaintiff filed a motion in state court seeking to compel Defendant to place the Marital Residence on the market and for an order to show cause regarding contempt. Ex. 1.

6. Defendant opposed the motion. Ex. 2.

7. Plaintiff replied to the opposition. Ex. 3.

8. In 2010, the state court granted Plaintiff's motion and held Defendant in contempt because he did not comply with his obligations to list the Marital Residence for sale (Ct. Dkt. #24, Decl. of J. Biggs, at Ex. 3, PDF Pages 42-51).

9. After an evidentiary hearing, the state court found that Defendant unilaterally removed the Marital Residence from the market for more than a year (*Id.* at PDF Pages 44-46).

10. The state court found that Defendant removed the property from the market when he filed a motion against Plaintiff (*Id.* at PDF Page 45).

11. Defendant argued to the state court that he could not control the listing of the property (*Id.*). The state court found his testimony was not credible (*Id.*). Defendant listed the property on his own; extended the listing seven times; and relisted it three times without Plaintiff's knowledge (*Id.*). Defendant also reduced the listing price twice without Plaintiff's knowledge (*Id.*).

12. The state court found:

> The history of the listing of the Marital Residence demonstrates that [Defendant] acted unilaterally and without consulting [Plaintiff] when dealing with [the listing real estate agent] Ms. Capurro. Moreover, Ms.

2

> Capurro required a subpoena for [Plaintiff] to review the listing file and then declined to appear at hearing when she was under a subpoena to do so. These are not the actions of a person who believes she is employed by both parties. Finally, [Defendant] utterly refused to permit another realtor to list the Marital Residence.

(*Id.* at PDF Page 46).

13. The state court continued with additional findings about Defendant's maintenance of the home:

> Once the Marital Residence was returned to the market, the evidence shows that [Defendant] did nothing to sell the property. The 'For Sale' sign is almost entirely hidden by foliage in the front yard. The landscaping in the front yard has been permitted to become overgrown and unkempt. In addition, the photos of the interior of the home which are available on-line present the home as messy, and do nothing to make the home attractive to prospective buyers. Simply put, the Court believes that while [Defendant] may have complied with the letter of the Court's Order after November 21, 2008, he sought to thwart the intent.

(*Id.*).

14. The state court held that Defendant's conduct was willful:

> Pursuant to the Court's November 15, 2006 Order approving, ratifying and incorporating the Parties' June 9, 2006 PSA [Property Settlement Agreement], [Defendant] knew the home was to be listed for sale immediately and was to remain listed until sold. This Order is clear and unambiguous. The PSA was signed by [Defendant] and the November 15, 2006 Order was served on his counsel. Despite the clear terms of the Order, [Defendant] caused the Marital Residence to be removed from the market from October 29, 2007 through November 21, 2008 - a period of more than a year during which the real estate market in Northern Nevada dropped significantly and Fernley experienced a devastating flood. After his Motion to Divide Undisclosed Property failed, [Defendant] caused the Marital Residence to be placed back on the market, thereby demonstrating that he had the ability to comply with this Court's Order and that his violation was willful.

(*Id.* at PDF Page 47).

15. The state found that "Plaintiff provided no credible explanation for his conduct. Even after the Marital Residence was re-listed for sale, Plaintiff has done nothing to assist with any sale" (*Id.*).

16. The state court found that Defendant "treated the Marital Residence as his own without any regard to the obligation to sell and to [Plaintiff's] significant disadvantage" (*Id.* at PDF Page 48).

17. The state court granted Plaintiff's motion to put the Marital Residence back on the

1  market.  The court noted that "The equitable remedy which [Plaintiff] seeks appears to be in the
2  nature of a request to reform or rescind the Parties' [Property Settlement Agreement] … This theory
3  was tried by [Plaintiff] without objection by [Defendant]" (*Id.*).  Relisting the property alone was an
4  inadequate remedy because it preserved the status quo at Plaintiff's expense (*Id.*).

5      18. As a result, the court awarded Plaintiff "a judgment in an amount equal to the equity
6  to which she would have been entitled in 2007 had the Marital Residence remained on the market"
7  (*Id.*).

8      19. The court calculated the equity in the Martial Residence when Defendant took the
9  property off the market and awarded Plaintiff a judgment based on the half the equity at that time in
10 the amount of $78,450.00 (*Id.* at PDF Page 49).

11     DATED this 7th day of September, 2011.          ARMSTRONG TEASDALE LLP

                                                              By:    /s/ Louis M. Bubala III
                                                                 LOUIS M. BUBALA III, ESQ.

                                                              Counsel for Sheelagh Dawn Biggs